# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| SEVILLE K. McCLENDON,<br>    Plaintiff,<br><br>v.<br><br>WARDEN MALDONADO, et al.,<br>    Defendants. | No. 3:16-cv-02136 (SRU) |

# INITIAL REVIEW ORDER

Seville K. McClendon is incarcerated at the Carl Robinson Correctional Institution. He has filed a *pro se* complaint under 42 U.S.C. § 1983 against Correctional Officer Smiley, Lieutenant Perez, and Warden Maldonado, as well as a motion for appointment of counsel.

**I.  Complaint [Doc. No. 1]**

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants "fair notice" of the claims and grounds upon which they are based and to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Conclusory" allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise

1

the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

The following allegations are taken from McClendon's complaint, Doc. No. 1, and assumed to be true for the purposes of this ruling. *See Iqbal*, 556 U.S. at 679. On June 13, 2016, McClendon took a shower at Osborn Correctional Institution. When he finished taking a shower, he asked another inmate to request that an officer release the shower door. Officer Smiley came to the shower and verbally harassed McClendon about his genitals, made other sexually derogatory comments, and refused to open the shower door. McClendon remained in the shower until he had the opportunity to ask another inmate to request that his shower door be opened.

After McClendon's release from the shower he attempted to speak to Officer Smiley regarding her reasons for refusing to open the shower door and verbally harassing him. Officer Smiley indicated that she was not required to immediately respond to inmate requests. McClendon asked Officer Smiley if he could speak to a lieutenant because he sought to assert a sexual harassment claim against her.

Officer Smiley then issued McClendon a disciplinary report for flagrant disobedience. Lieutenant Perez spoke to McClendon in his office. McClendon accused Officer Smiley of sexually harassing him, stated that he did not feel safe and requested to make a statement to the Connecticut State Police and to assert a claim under the Prison Rape Elimination Act ("PREA").

Lieutenant Perez stated that he would not comply with McClendon's requests and issued an order that McClendon be transferred to a cell in the restrictive housing unit pursuant to the disciplinary report issued by Officer Smiley for flagrant disobedience. Before his placement in the restrictive housing unit, officers escorted McClendon to the medical unit. McClendon informed staff members in the medical unit that Officer Smiley had sexually harassed him. After being placed in a cell in the restrictive housing unit, McClendon related his allegations of sexual harassment to a member of the mental health unit. In response to those allegations, the mental health unit staff member sought the approval of Lieutenant Perez to move McClendon to a different cell to be monitored more closely. Lieutenant Perez authorized the transfer of McClendon to a new cell as well as the removal of his clothing and catheter and his placement in in a special gown. McClendon remained in the cell overnight.

When a mental health physician spoke to McClendon the next morning, she ordered officials to move McClendon to a regular cell in the restrictive housing unit. During his stay in the restrictive housing unit, McClendon sent a request to Warden Maldonado regarding the sexual harassment by Officer Smiley and actions of Lieutenant Perez, but did not receive a response.

Four days after his arrival in the restrictive housing unit, Captain Colon visited McClendon and listened to his allegations of sexual harassment by Officer Smiley. After reviewing the videotapes of the incidence, Captain Colon started the process of filing a PREA complaint on McClendon's behalf against Officer Smiley. McClendon remained in the restrictive housing unit for nine more days before a counselor came to speak to him about reducing the

disciplinary report to a Class B offense. The counselor informed McClendon that if he pleaded guilty to the infraction, he would be released from restrictive housing. McClendon pleaded guilty to the Class B offense and prison officials released him from the restrictive housing unit.

McClendon then sent a request to Warden Maldonado seeking a dismissal of the disciplinary report altogether. The warden did not respond to the request.

On June 28, 2016, a Connecticut State Trooper came to Osborn to speak to McClendon regarding his claim of sexual harassment against Officer Smiley. The Trooper took McClendon's statement and filed a report.

Two days later, prison officials transferred McClendon to Carl Robinson Correctional Institution. No one responded to McClendon's grievances against Officer Smiley or Lieutenant Perez and officials did not dismiss the disciplinary report.

    A. *Official Capacity Claims*

McClendon seeks monetary damages, restoration of his good time credits and an order directing the State of Connecticut to file criminal charges against the defendants. For the reasons set forth below, all official capacity claims are dismissed.

To the extent that McClendon seeks monetary damages from the defendants in their official capacities, that claim is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 169–70 (1985) (Eleventh Amendment, which protects the state from suits for monetary relief, also protects state officials sued for damages in their official capacities); *Quern v. Jordan*, 440 U.S. 332, 342 (1979) (Section 1983 does not override a state's Eleventh

Amendment immunity). The claim for monetary damages against the defendants in their official capacities is dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

A victim of allegedly criminal conduct is not entitled to a criminal investigation or the prosecution of the alleged perpetrator of the crime. *See Leeke v. Timmerman*, 454 U.S. 83 (1981) (per curiam) (inmates alleging beating by prison guards lack standing to challenge prison officials' request to magistrate not to issue arrest warrants); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."); *McCrary v. County of Nassau*, 493 F. Supp. 2d 581, 588 (E.D.N.Y. 2007) ("A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person."); *Osuch v. Gregory*, 303 F. Supp. 2d 189, 194 (D. Conn. 2004) ("An alleged victim of a crime does not have a right to have the alleged perpetrator investigated or criminally prosecuted."). Thus, I cannot award McClendon the relief he seeks in the form of an order directing the Connecticut State Police or the State's Attorney's Office to file criminal charges against the defendants related to their conduct as described in the complaint. The request for relief seeking to have the defendants criminally prosecuted is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

McClendon claims that he lost good time credit as a result of pleading guilty to the Class B disciplinary report. Because good time credit may no longer be earned by inmate who committed a crime on or after October 1, 1994, the court construes McClendon's claim as a loss of Risk Reduction Earned Credits ("RREC"). *See* Conn. Dep't of Corr. Admin. Directive 4.2(6)(A)(4) (2012), *available at* http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0402.pdf

("Statutory Good Time is *NOT* authorized" for "[s]entences for an offense committed on or after October 1, 1994."). If an inmate was convicted of a crime committed after October 1, 1994, prison officials may forfeit the inmate's RREC as a disciplinary sanction. *See* Admin. Directive 4.2A(11) (2013), *available at* http://www.ct.gov/doc/LIB/doc/PDF/AD/ad0402a.pdf. As of January 1, 2016, "RREC that is forfeited shall not be restored." *See id.* Thus, the plaintiff has no right to the restoration of the RREC he lost as a result of the disciplinary sanction he received after pleading guilty to the Class B offense. This claim for injunctive relief is dismissed.[1] *See* 28 U.S.C. § 1915A(b)(1).

    B. *PREA Claim*

---

[1] Even if McClendon's forfeited RREC could be restored, it is a sanction that affects the duration of his confinement. *See* Admin. Directive 4.2A(4) & (6) (RREC could affect an inmate's discharge date by up to five (5) days a month if in compliance). Any challenge to the duration or validity of a plaintiff's incarceration or confinement should be brought in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973) (habeas corpus was appropriate remedy for inmates seeking restoration of good-conduct-time credits which would shorten the length of their confinement in prison); *Jenkins v. Haubert*, 179 F.3d 19, 23 (2d Cir. 1999) (holding that "where the fact or duration of a prisoner's confinement is at issue, § 1983 is unavailable, and only [habeas relief under 28 U.S.C.] § 2254(b) with its exhaustion requirement may be employed"). Because a request directing the defendants to credit McClendon's sentence with the RREC lost as a result of the sanction imposed for his pleading guilty to the Class B offense cannot be granted in section 1983 action, this claim for injunctive relief is dismissed without prejudice. *See* 28 U.S.C. § 1915A(b)(1).

    In addition, it would be inappropriate to construe this action as a habeas petition because McClendon has not alleged that he has met the exhaustion requirement for filing a section 2254 petition. A prerequisite to habeas corpus relief in federal court is the exhaustion of all available state remedies. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); 28 U.S.C. § 2254(b)(1)(A). There are no facts to suggest that McClendon filed a state habeas petition seeking the return of the good time credits that he lost as a sanction for pleading guilty to the Class B offense.

McClendon asserts that on June 13, 2016, he informed Lieutenant Perez that Officer Smiley had sexually harassed him and that he sought to file a claim under the PREA. Lieutenant Perez indicated that he would not assist McClendon in filing a PREA claim. A week or so later, Captain Colon initiated a PREA complaint on McClendon's behalf.

There is nothing in the PREA to suggest that Congress intended to create a private right of action for inmates to sue prison officials for non-compliance with the Act. *See Chao v. Ballista*, 772 F. Supp. 2d 337, 341 n.2 (D. Mass. 2011) (collecting cases and noting that "every court to address the issue" has held that the PREA does not allow a private cause of action); *Chinnici v. Edwards*, 2008 WL 3851294, at *3 (D. Vt. Aug. 12, 2008) ("[T]he PREA confers no private right of action. The PREA is intended to address the problem of rape in prison, authorizes grant money, and creates a commission to study the issue."). The Act is intended to compile data and statistics concerning incidences of prison rape and to develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape. *See* PREA, 42 U.S.C. §§ 15602–03, 15606–07. The Act does not grant any specific rights to inmates. The United States Supreme Court has held that in the absence of "an 'unambiguous' intent to confer individual rights," such as a right to sue, courts will not imply such a right in a federal funding provision. *Gonzaga Univ. v. Doe*, 563 U.S. 273, 280 (2002).

Because the PREA does not provide a private right of action, the allegations that defendant Perez refused to investigate or file a PREA claims on behalf of McClendon does not state a claim upon which relief may be granted. The claim asserted under the PREA is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

## C. *Due Process Claim*

McClendon alleges that on June 13, 2016, Officer Smiley issued him a disciplinary report for flagrant disobedience after he complained that she had sexually harassed him and had refused to release him from the shower. McClendon contends that the allegations against him in the disciplinary report were false. Lieutenant Perez transferred McClendon to the restrictive housing unit due to the issuance of the disciplinary report. Approximately thirteen days after being placed in the restrictive housing unit, a counselor informed McClendon that the initial disciplinary charge was being reduced to a Class B offense. McClendon pleaded guilty to the Class B offense in exchange for his release from the restrictive housing unit.

McClendon claims that after his release from the restrictive housing unit, he sent a request to Warden Maldonado seeking a dismissal of the disciplinary report altogether. The warden did not respond to the request.

McClendon complains that Warden Maldonado should have dismissed the disciplinary report that had been reduced to a Class B offense because Officer Smiley had lied about the conduct that formed the basis of the issuance of the original disciplinary report charging him with a Class A offense. It is well-settled, however, that an "inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest")).

Furthermore, McClendon chose to forgo a hearing on the reduced Class B offense and instead agreed to plead guilty to the offense because he sought immediate release from the restrictive housing unit. There are no allegations that the defendants or any other prison official denied him any procedural due process protections in connection with the disposition of the disciplinary report for the reduced Class B charge. Thus, McClendon has not stated a violation of his due process rights against Warden Maldonado or the other defendants. *See Best v. Smith*, 2014 WL 4782707, at *3 (D. Conn. Sept. 24, 2014) (concluding claim that inmate's procedural due process "rights were violated by the filing of a false disciplinary ticket, to which he ultimately pleaded guilty, [was] unavailing") (citing *Coleman v. Sutton,* 530 F. Supp. 2d 451, 453 (W.D.N.Y. 2008) ("[E]ven viewing the record in the light most favorable to plaintiff, the undisputed facts establish that defendants are entitled to summary judgment. For one thing, plaintiff pleaded guilty to the charge[s] in the misbehavior report filed against him. . . . That alone defeats any claim based on the issuance of the report."), *aff'd*, 355 F. App'x 566 (2d Cir. 2009)). The due process claim is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

   D.  *Eighth Amendment Claims*

McClendon attempts to raise a number of claims under the Eighth Amendment. He alleges that Officer Smiley sexually harassed him and refused to release him from the shower. When McClendon stated that he wanted to report her conduct to a lieutenant, Officer Smiley issued him a disciplinary report for flagrant disobedience. Lieutenant Perez refused to investigate McClendon's allegations or arrange for a visit between McClendon and a Connecticut State Trooper or facilitate the filing of PREA claim against Officer Smiley. Instead, he sent

9

McClendon to the restrictive housing unit pursuant to the disciplinary report that had been issued by Officer Smiley. Later that day, Lieutenant Perez approved McClendon's placement in a special cell in the restrictive housing unit without his catheter until the following morning.

a. Sexual Harassment

The Second Circuit has held that "sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). Thus, "allegations of [sexual] abuse" are sometimes "cognizable as Eighth Amendment claims." *Id.* Nevertheless, the prisoner must allege "a harm of federal constitutional proportions," which—the Second Circuit has concluded—requires more than "isolated episodes of harassment and touching." *Id.*

Here, McClendon alleges that Officer Smiley approached him while he was in the shower, made sexually derogatory comments, and refused to open the shower door. The acts alleged "are despicable and, if true, . . . may potentially be the basis of state tort actions." *See id.* But, much like the "small number of incidents in which [a prisoner] allegedly was verbally harassed, touched, and pressed against without his consent" in *Boddie*, the "insolated incidents" described by McClendon do not give rise to a viable Eighth Amendment claim. *See id.*; *cf. Holland v. City of New York*, 197 F. Supp. 3d 529, 547 (S.D.N.Y. 2016) (Eighth Amendment claim of sexual harassment requires "at the very least, alleg[ations of] egregious sexual conduct"); *Jones v. Harris*, 665 F. Supp. 2d 384, 396 (S.D.N.Y. 2009) ("[V]erbal sexual harassment of a prisoner, without physical contact, does not violate the Eighth Amendment."); *see also Johnson v. Enu*, 2011 WL 3439179, at *14 (N.D.N.Y. July 13, 2011) (noting that

*Boddie* "dismissed as inadequate a prisoner's claim[s] that a female corrections officer made a possible pass at him, squeezed his hand, touche[d] his penis[,] called him a 'sexy black devil,' pressed her breasts against his chest, and pushed her vagina against his penis" (citing *Boddie*, 105 F.3d at 859–61)). Therefore, I dismiss McClendon's Eighth Amendment claim for sexual harassment against Officer Smiley pursuant to 28 U.S.C. § 1915A(b)(1).

      b. Deliberate Indifference to Safety

To state an Eighth Amendment claim for deliberate indifference to safety, McClendon must allege that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendants were "'deliberate[ly] indifferen[t]' to [his] health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)). The harm alleged "must be, objectively, sufficiently serious," meaning that it "must result in the denial of 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) (other internal quotation marks omitted). Moreover, the defendants' state of mind must involve "more than mere negligence." *Id.* at 835. The higher standard of "deliberate indifference" requires that "the official know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 835, 837.

I held above that the sexual harassment alleged by McClendon did not violate the Eighth Amendment because it was not "objectively, sufficiently serious." *Cf. Boddie*, 105 F.3d at 861. Even accepting as true that Lieutenant Perez and Warden Maldonado "kn[ew] of and disregard[ed]" McClendon's complaints of sexual harassment by Officer Smiley, they cannot have "ha[d] knowledge that [McClendon] face[d] a substantial risk of *serious* harm" because

11

Officer Smiley's alleged conduct was not "sufficiently serious." *See Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 621 (2d Cir. 1996) (emphasis added); *Boddie*, 105 F.3d at 861. Thus, McClendon does not state plausible claims under the Eighth Amendment against Lieutenant Perez and Warden Maldonado on a "deliberate indifference" theory, and I dismiss those claims under 28 U.S.C. § 1915A(b)(1).

      c. Unconstitutional Conditions of Confinement

"The conditions of a prisoner's confinement can give rise to an Eighth Amendment violation." *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002). To state an Eighth Amendment claim for unconstitutional conditions of confinement, an inmate must allege sufficient facts to plausibly demonstrate that prison officials failed to provide for the inmate's "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety." *DeShaney v. Winnebago Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989). The prisoner must show both "that the prison officials' transgression was 'sufficiently serious'" and also "that the officials acted, or omitted to act, . . . with 'deliberate indifference to inmate health or safety.'" *Phelps*, 308 F.3d at 185 (quoting *Farmer*, 511 U.S. at 834).

I have ruled that the sexual harassment to which McClendon allegedly was subjected was itself not "sufficiently serious" to violate the Eighth Amendment. *See Boddie*, 105 F.3d at 861. Accordingly, prison officials' failure to prevent that harassment cannot have been "sufficiently serious" to violate McClendon's constitutional rights. The officials' alleged indifference to McClendon's claims of sexual harassment, though hardly commendable, falls far short of "depriv[ing] prisoners of their 'basic human needs'" or "expos[ing] prisoners to conditions that

'pose an unreasonable risk of serious damage to [their] future health.'" *Phelps*, 308 F.3d at 185 (quoting *Helling v. McKinney*, 509 U.S. 25, 32, 35 (1993)). Thus, McClendon fails to "establish the objective element of an Eighth Amendment claim," *see id.*, and I dismiss his claim for unconstitutional conditions of confinement pursuant to 28 U.S.C. § 1915A(b)(1).

### E. *First Amendment Retaliation Claim*

To state a claim that a "state actor retaliated . . . for exercising a constitutional right," a prisoner plaintiff must plausibly allege that (1) "the conduct at issue was constitutionally protected" and (2) "the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline the plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). The Second Circuit has cautioned that "[r]etaliation claims by prisoners are 'prone to abuse' [because] prisoners can claim retaliation for every decision they dislike." *Id.* (internal quotation marks omitted). Thus, "[a] complaint of retaliation that is wholly conclusory can be dismissed on the pleadings alone." *Id.* (internal quotation marks omitted).

McClendon plausibly alleges that his conduct was "constitutionally protected," because "retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments." *Id.* at 80. McClendon also plausibly alleges facts sufficient to "give rise to an inference that the defendants disciplined [him] in retaliation" for his use of the grievance process. *See id.* at 81. According to McClendon, Officer Smiley issued him a disciplinary report after he sought to file a sexual harassment claim against her. When McClendon spoke to Lieutenant Perez about the alleged harassment, Lieutenant Perez refused to help McClendon file a PREA claim and instead

13

transferred him to the restrictive housing unit, ordered that McClendon's catheter be removed, and placed him in a special gown. Accepting those claims as true, as I must, McClendon has pled facts sufficient to show that McClendon's "protected conduct"—his attempt to file a grievance against Officer Smiley—"was a substantial or motivating factor in his discipline." *Id.*; *see Richard v. Fischer*, 38 F. Supp. 3d 340, 358 (W.D.N.Y. 2014) ("[T]he filing of a false disciplinary report is a serious enough action that temporal proximity between an inmate grievance and the filing of a report is enough to state a retaliation claim."). Thus, McClendon has "sufficiently alleged" the elements of a First Amendment retaliation claim: (1) "participation in protected activity," namely, "the use of the prison grievance system"; (2) "adverse action on the part of the defendants"—i.e., "false misbehavior reports" and subsequent punishment—"that would deter a prisoner of ordinary firmness from vindicating his or her constitutional rights through the grievance process"; and (3) "a causal connection between the protected activity and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 384 (2d Cir. 2004).

To be sure, the First Amendment does not "guarantee[] prison inmates the right to present frivolous claims," *see Lewis v. Casey*, 518 U.S. 343, 353 n.3 (1996), and so to be constitutionally protected, a prisoner's grievance must "not [be] frivolous." *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000); *see Perez v. Fenoglio*, 792 F.3d 768, 783 (7th Cir. 2015) ("[F]iling a non-frivolous grievance is a constitutionally protected activity sufficient to support a retaliation claim."). Here, although I have held that McClendon's claims of sexual harassment do not allege "harm[s] of federal constitutional proportions," *see Boddie*, 105 F.3d at 861, they certainly describe unwelcome and potentially unlawful conduct that he was entitled to petition prison

14

officials to redress. Hence, I conclude that McClendon has alleged plausible First Amendment retaliation claims against Officer Smiley and Lieutenant Perez. *Cf. Richard*, 38 F. Supp. 3d at 358 ("Plaintiff's complaint alleges that his grievances were filed between one to three months prior to the filing of the alleged retaliatory disciplinary reports . . . . Plaintiff has alleged a nexus between his protected activity and the alleged adverse action to state a claim for retaliation."); *Ellis v. Viles*, 2010 WL 6465282, at *5–*6 (D. Mass. Aug. 26, 2010) ("It could reasonably be inferred from the sequence of events that [the prison official] learned about [the prisoner]'s complaints regarding his sexual misconduct . . . , and then basically set [the prisoner] up and retaliated against him by charging him with having forged his lower bunk pass and having him placed in SHU. . . . [B]oth the chronology of events and the relatively short time frame within which all the acts occurred support an inference of retaliation.").

    F.  *State Law Defamation Claim*

McClendon asserts that defendants Smiley and Perez defamed his character. McClendon offers no other support for this conclusory allegation.

Under Connecticut law, a defamatory statement is defined as a communication that tends to "harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *QSP, Inc. v. Aetna Cas. & Sur. Co.*, 256 Conn. 343, 356 (2001) (quoting 3 Restatement (Second) Torts § 559). To be actionable, however, an allegedly defamatory statement "must convey an objective fact, as generally, a defendant cannot be held liable for expressing mere opinion." *Daley v. Aetna Life & Cas. Co.*, 249 Conn. 766, 795 (1999). There are no facts to suggest that either defendant Smiley or Perez

15

issued a statement that harmed the reputation of McClendon, either in the estimation of the community or by deterring other people from associating with him. The conclusory claim that defendants Perez and Smiley defamed McClendon's character is dismissed as lacking an arguable factual or legal basis. *See* 28 U.S.C. § 1915A(b)(1).

## II. Motion for Appointment of Counsel [ECF No. 3]

Civil litigants, unlike criminal defendants, do not have a constitutional right to the appointment of counsel. *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986) (district judges are afforded "[b]road discretion" in determining whether to appoint *pro bono* counsel for an indigent litigant in a civil case); 28 U.S.C. § 1915(e)(1) ("The court *may* request an attorney to represent any person unable to afford counsel.") (emphasis added)). The Second Circuit has stated that before an appointment is even considered in a civil action, the indigent person must show that he or she is unable to obtain counsel or legal assistance. *See Hodge*, 802 F.2d at 61.

McClendon states that he called two law firms and someone at each firm indicated he or she would call McClendon back, but never did so. In July 2016, someone called a law firm on McClendon's behalf, but an employee at the firm indicated he or she could not take McClendon's case. McClendon does not indicate that he has made any attempts to contact the Inmate Legal Aid Program[2] with regard to any questions he might have about litigating this case.

---

[2] Attorneys at the Inmate Legal Aid Program may be contacted at the following address and telephone number: Inmate Legal Aid Program, Bansley Anthony Burdo, LLC, 265 Orange Street, New Haven, CT 06510; 1 (866) 311-4527.

I conclude that McClendon has made insufficient attempts to secure legal representation or assistance on his own. Because there is a possibility that McClendon may be able to secure legal assistance or representation independently, I deny the motion for appointment of counsel at this time. *See Hodge*, 802 F.2d at 61.

### III. Conclusion

The case will proceed on the First Amendment retaliation claim against Officer Smiley and Lieutenant Perez in their individual capacities.

It is hereby ordered that:

(1) The claim for monetary damages against the defendants in their official capacities is **DISMISSED** pursuant to pursuant to 28 U.S.C. § 1915A(b)(2). The claims for injunctive relief, the Fourteenth Amendment due process claim, the PREA claim, the Eighth Amendment claims, and the state law defamation claim are all **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

The Motion for Appointment of Counsel [**Doc. No. 3**] is **DENIED** without prejudice to refiling at a later stage of litigation. Any renewal of that motion shall be accompanied by a summary of any attempts to obtain counsel or legal assistance, including the names of the attorneys contacted, the dates upon which McClendon made those contacts and the reasons why assistance was unavailable.

(2) **Within twenty-one (21) days of this Order**, the Clerk shall ascertain from the Department of Correction Office of Legal Affairs the current work addresses for Correctional Officer Smiley and Lieutenant Perez and mail a waiver of service of process request packet to

each defendant in his or her individual capacity at his or her current work address. On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request. If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Defendants shall file their response to the complaint, either an answer or motion to dismiss, **within sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the defendants choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed **within six months (180 days)** from the date of this order. Discovery requests should not be filed with the court.

(5) All motions for summary judgment shall be filed **within seven months (210 days)** from the date of this order.

(6) **The Pro Se Prisoner Litigation Office shall** send a courtesy copy of the complaint and this order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

So ordered.

Dated at Bridgeport, Connecticut, this 31st day of August 2017.

/s/ STEFAN R. UNDERHILL
                                            Stefan R. Underhill
                                            United States District Judge